IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:09-CR-73-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| PETERA MICALE CARLTON, | ) | |
| | ) | |
| Defendant. | ) | |

On July 24, 2020, Petera Micale Carlton ("Carlton" or "defendant") moved for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) and filed a memorandum and records in support [D.E. 138, 143, 144]. On November 13, 2020, the United States responded in opposition [D.E. 147]. On November 30, 2020, Carlton replied [D.E. 150].

I.

On November 14, 2009, pursuant to a written plea agreement, Carlton pleaded guilty to using and carrying a firearm in furtherance of a drug trafficking crime and aiding and abetting. See [D.E. 40, 42]. On April 8, 2010, the court held a sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See [D.E. 49, 107]; Fed. R. Crim. P. 32(i)(3)(A)–(B). The court calculated Carlton's criminal history category to be VI and his advisory guideline range to be 262 to 327 month's imprisonment. See [D.E. 107] 1. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Carlton to 288 months' imprisonment. See [D.E. 49] 2. Carlton did not appeal.

On July 16, 2012, Carlton moved pro se to reduce his sentence [D.E. 58]. On January 30, 2013, the court denied Carlton's motion [D.E. 65].

On June 16, 2014, Carlton moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence [D.E. 82, 84]. On September 11, 2014, Carlton filed another motion to vacate his sentence [D.E. 83]. On May 17, 2016, Carlton filed an amended motion to vacate his sentence under section 2255 [D.E. 95]. On June 11, 2016, Carlton filed a second amended motion to vacate his sentence under section 2255 [D.E. 100, 101]. On June 7, 2017, the court dismissed Carlton's motions and denied a certificate of appealability [D.E. 110]. On December 4, 2017, Carlton moved for reconsideration [D.E. 117]. On February 26, 2018, the court denied Carlton's request for relief [D.E. 119]. On April 16, 2018, Carlton requested a certificate of appealability [D.E. 121]. On November 13, 2018, Carlton filed another section 2255 motion [D.E. 122]. On April 13, 2020, the court dismissed Carlton's motion and denied a certificate of appealability [D.E. 134].

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence

2

under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

      (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

      (ii) The defendant is—

         (I) suffering from a serious physical or medical condition,

         (II) suffering from a serious functional or cognitive impairment, or

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not

---

           (III) experiencing deteriorating physical or mental health because of the aging process,

        that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See id. at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., id. at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

As for Carlton's request for compassionate release, Carlton does not mention exhaustion. Moreover, the government has not invoked section 3582's exhaustion requirement. The court assumes without deciding that Carlton has exhausted his administrative remedies and addresses Carlton's claim on the merits.

Carlton seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Carlton cites the COVID-19 pandemic and his health conditions, including diabetes, hypertension, diabetic neuropathy and resulting amputations, respiratory conditions, and high cholesterol. See [D.E. 138] 1; [D.E. 143] 1–3; [D.E. 144]; [D.E. 150] 1–2. Carlton also cites the conditions at MCFP Springfield, his release plan, and that he served over 50% of his sentence. See [D.E. 138]; [D.E. 143] 3–4, 17–19.

5

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition . . . from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Although Carlton states that he suffers from diabetes, hypertension, diabetic neuropathy and resulting amputations, respiratory conditions, and high cholesterol, he has not demonstrated that he is not going to recover from these conditions or that they cannot be treated while Carlton serves his sentence. In fact, the record shows that the BOP is treating Carlton for these conditions. See [D.E. 144]. Accordingly, reducing Carlton's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Carlton's health conditions, rehabilitation efforts, and release plan are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against reducing Carlton's sentence. See United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Carlton is 45 years old and engaged in very serious criminal behavior from 2006 to 2008. Carlton and several co-conspirators were involved in counterfeiting U.S. currency, credit card fraud, and identity theft. See PSR ¶¶ 9–20. During this period, Carlton also obtained a firearm while traveling to purchase one kilogram of cocaine. See id. at ¶¶ 18, 20. Carlton and a co-conspirator then held the supplier at gunpoint and stole the cocaine, discharging the firearm during the robbery. See id. Moreover, Carlton is a violent recidivist with state convictions for larceny after breaking

6

and/or entering, inciting a riot, sell and deliver cocaine, forgery of an instrument, and accessory after the fact—voluntary manslaughter, and a federal conviction for possession of a firearm by a felon. See id. at ¶¶ 23–31. Carlton has repeatedly violated probation and supervised release including federal supervised release. See id. In Carlton's latest stint in the BOP, Carlton has incurred numerous BOP violations, including refusal to follow orders and possession of a dangerous weapon. See [D.E. 147] 15. The court also has considered Carlton's potential exposure to COVID-19, his health conditions, his rehabilitation efforts, and his release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011). Having considered the entire record, the steps that the BOP has taken to address COVID-19 and treat Carlton,[2] Carlton's misconduct in prison, the section 3553(a) factors, Carlton's arguments, the government's persuasive response, and the need to punish Carlton for his criminal behavior, to incapacitate Carlton, to promote respect for the law, to deter others, and to protect society, the court declines to grant Carlton's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished).

As for Carlton's request for home confinement, Carlton seeks relief under the CARES Act. See [D.E. 138]. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020

---

[2] The BOP has begun to vaccinate BOP staff and inmates. Carlton was offered the vaccine but refused it. See [D.E. 151]. Other staff and inmates at his facility have not. See id. Thus, even though Carlton has refused the vaccine, his risk is lower.

7

WL 5535020, at *1 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). As such, the court dismisses Carlton's request for home confinement.

II.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 138], and DISMISSES defendant's request for home confinement.

SO ORDERED. This 29 day of January 2021.

JAMES C. DEVER III
United States District Judge